FILED
 2013 May-06 PM 02:26
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHARLES D. JACKSON, ) | |
| ) | |
|    Claimant, ) | |
| ) | |
| vs. ) | Case No. 2:12-CV-0190-CLS |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
|    Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Charles D. Jackson commenced this action on January 17, 2012, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant contends that the ALJ failed to properly develop the record because he failed to obtain a medical opinion on the issue of medical equivalence under Listing 12.05C, governing mental retardation. The ALJ

> has an obligation to develop a full and fair record, even if the claimant is represented by counsel. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). [Even so, t]he ALJ is not required to seek additional independent expert medical testimony before making a disability determination *if the record is sufficient and additional expert testimony is not necessary for an informed decision. Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999) (holding the record, which included the opinion of several physicians, was sufficient for the ALJ to arrive at a decision); *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988) (holding the ALJ must order a consultative exam when it is necessary for an informed decision).

*Nation v. Barnhart,* 153 F. App'x 597, 598 (11th Cir. 2005) (emphasis and alteration supplied).

Here, the record was sufficient for the ALJ to make an informed decision, and there was no need for the ALJ to seek any additional medical testimony on the issue of medical equivalence to Listing 12.05C. That listing states as follows:

> *Mental Retardation.* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before

age 22.

      The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

      . . . .

      C.    A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[. . . .]

20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.05 (listings) (all italics in original). With regard to determining whether claimant's impairments medically equal the Listing, Social Security regulations require the following:

      **§ 416.926  Medical equivalence for adults and children.**

      (a) *How medical equivalence is determined.* We will decide that your impairment(s) is medically equivalent to a listed impairment in appendix 1 of subpart P of part 404 of this chapter if the medical findings are at least equal in severity and duration to the listed findings. We will compare the symptoms, signs, and laboratory findings about your impairment(s), as shown in the medical evidence we have about your claim, with the corresponding medical criteria shown for any listed impairment. When we make a finding regarding medical equivalence, we will consider all relevant evidence in your case record. Medical equivalence can be found in two ways:

      (1)(i) If you have an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but —

      (A) You do not exhibit one or more of the medical findings specified in the particular listing, or

      (B) You exhibit all of the medical findings, but one or more of the findings is not as severe as specified in the listing;

>> (ii) We will nevertheless find that your impairment is medically equivalent to that listing if you have other medical findings related to your impairment that are at least of equal medical significance.
>
> (2) If you have an impairment that is not described in the Listing of Impairments in appendix 1, or you have a combination of impairments, no one of which meets or is medically equivalent to a listing, we will compare your medical findings with those for closely analogous listed impairments. If the medical findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

20 C.F.R. § 416.926(a) (italics in original).

The Eleventh Circuit held in *Hodges v. Barnhart,* 276 F.3d 1265 (11th Cir. 2001), that, "absent evidence of sudden trauma that can cause retardation, the IQ tests [revealing a score lower than 70] create a rebuttable presumption of a fairly constant IQ throughout [the claimant's] life." *Id.* at 1268 (alterations supplied). Therefore, "a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age of twenty-two, when she presented evidence of low IQ test results after the age of twenty-two." *Id.* at 1266. Even so, the court (or the Commissioner during an administrative proceeding) may consider "evidence of [claimant's] daily life to rebut this presumption of mental impairment." *Id.* at 1269 (alteration supplied).

The ALJ did not discuss claimant's disability status under Listing 12.05C, but

there was no need for him to do so because there was no evidence that the Listing was satisfied, or that claimant had impairments that were medically equivalent to the Listing.[1]  Dr. Cynthia A. Neville conducted a consultative psychological examination on July, 28, 2008.  Intelligence testing revealed a Verbal IQ score of 66, and a Full Scale IQ score of 65, both of which are within the Mild Mental Retardation range, and a Performance IQ score of 70, which is in the Borderline Intellectual Functioning Range.  Dr. Neville noted that claimant complained of difficulties with his vision, so she opined that claimant's scores might be "a mild underestimate of his true intellectual level [which] probably falls within the Borderline range based on his history of earning a driver's license, past employment as a cook, ability to shop, cook, and do laundry independently, and his performance during the mental status examination of this assessment."[2]  Thus, despite IQ scores that fall within the mental retardation range, Dr. Neville assessed claimant with Borderline Intellectual Functioning.[3]  The ALJ apparently accepted that assessment, given that he did not find claimant to be disabled under Listing 12.05C.  The ALJ's decision was consistent with Eleventh Circuit authority.  In *Popp v. Heckler*, 779 F.2d 1497 (11th Cir. 1986), the Eleventh Circuit held that the mental retardation listing "does not

---

[1] Likewise, if the ALJ's failure to address Listing 12.05C was in error, any such error was harmless, for the reasons discussed above.

[2] Tr. 266-67 (alteration supplied).

[3] Tr. 267.

5

require the [Commissioner] to make a finding of mental retardation based on the results of an IQ test alone." *Id.* at 1499 (alteration supplied).  If there is a question as to the validity of the IQ test results, "[t]he ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior." *Id.* at 1500 (alteration supplied).

Claimant complaints that Dr. Neville's assessment cannot constitute substantial evidence of no mental retardation because Dr. Neville did not have access to claimant's school records.  It is true that Dr. Neville did not review claimant's school records,[4] but it is unclear how those records would have affected Dr. Neville's assessment if she had reviewed them.  To the contrary, the school records actually support Dr. Neville's finding of Borderline Intellectual Functioning.  In 1982, when claimant was in 8th grade, he received a Verbal Scale IQ score of 69, a Performance Scale IQ score of 80, and a Full Scale IQ score of 72, which placed him in the Borderline Intellectual Functioning range.[5]  Claimant was referred for special education placement,[6] but it ultimately was determined that he should be placed in the regular curriculum because he had been doing well in school.[7]  Because the IQ scores

---

[4] *See id.* ("No results of any previous intellectual assessments were made available to the undersigned clinician with which to gauge the consistency of the current findings.").

[5] Tr. 191-92, 194.

[6] Tr. 194.

[7] Tr. 195.

found in claimant's school records actually are *higher* than those found by Dr. Neville, and because there is additional evidence of claimant's ability to function at a higher level than mental retardation, it is difficult to understand how those scores might have caused Dr. Neville to conclude that claimant was functioning at a *lower* intellectual level than she had assessed in her report.

In summary, there is nothing in the record, and nothing that claimant asserts *should* have been in the record, to cause this court to question Dr. Neville's assessment of Borderline Intellectual Functioning. Thus, the ALJ's finding of Borderline Intellectual Functioning was supported by substantial evidence, there was no need for him to obtain additional medical testimony, and his failure to consider claimant's disability under Listing 12.05C was not in error. The ALJ also did not err in failing to consider whether claimant medically equaled the Listing, because there also is no evidence of any medical findings that are at least of equal medical significance to the findings required by the Listing.

Based on the foregoing, the Commissioner's finding that claimant is not disabled is supported by substantial evidence and in accordance with applicable law. The decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk of Court is directed to close this file.

DONE this 6th day of May, 2013.

                                                                   _____
                                                                   United States District Judge